**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **BROOKE CLARK,** *et al.* for themselves and all others similarly situated, | : : : | |
| Plaintiffs, | : : | Case No.: 1:20-cv-757 |
| v. | : : | Judge Timothy S. Black |
| **A&L HOME CARE AND TRAINING CENTER, LLC,** *et al.*, | : : : | |
| Defendants. | : | |

**PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL COLLECTIVE
ACTION CERTIFICATION**

Plaintiffs Larry Holder, Calvin Marcum, and Jessica Vanwinkle ("Plaintiffs" or "Named

Plaintiffs"),[1] on behalf of themselves and all others similarly situated, respectfully move, pursuant

to Section 216 (b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for entry of an

order from this Court:

(1)   Conditionally certifying Plaintiffs' proposed FLSA collectives[2] defined as:

> **FLSA Travel Time Collective: All current and former hourly paid
> employees of Defendants who, between February 11, 2018**[3] **and [the
> date Defendants changed their travel policy to include hourly payment
> for travel time], worked in excess of 40 hours per workweek and were
> required to travel between clients' homes.**

> **FLSA Shift Differential Collective: All current and former hourly paid
> employees of Defendants who, between February 11, 2018 and the**

---

[1] The parties have stipulated to the dismissal of Named Plaintiff Brooke Clark's claims against Defendants in this action. (*See* Doc. No. 10)

[2] None of the FLSA Collective Definitions include individuals who have properly waived their right to participate in class and collective action litigation.

[3] This date represents three years prior to the filing of the instant motion.

present, worked in excess of 40 hours per workweek and received shift differential pay.

**FLSA Minimum Wage Collective:** All current and former hourly paid employees of Defendants who, between February 11, 2018 and [the date Defendants changed their travel policy to include hourly payment for travel time], were required to travel between clients' homes using their own vehicle.

(2)     Implementing a procedure whereby a Court-approved Notice of Plaintiffs' FLSA claims is sent (via U.S. Mail and e-mail), and a Court-approved Reminder Notice is sent (via e-mail and text message) to Plaintiffs' proposed FLSA collectives as set forth above; and,

(3)     Requiring Defendants to, within fourteen (14) days of this Court's order, identify all putative collective members by providing a list in electronic and importable format, of the names, addresses, e-mail addresses, phone numbers, dates of employment, and position(s) held, of all putative collective members who meet any one or more of the above collective definitions proposed by Plaintiffs.

The relief sought is appropriate for the reasons discussed in the attached Memorandum in Support.

Respectfully submitted,

*/s/ Greg R. Mansell*
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
Rhiannon M. Herbert (0098737)
(*Rhiannon@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614
*Counsel for Plaintiffs*

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**</u>

## I.   <u>INTRODUCTION</u>

This is an action for unpaid wages brought pursuant to the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), filed as a Collective and Class Action. Named Plaintiffs' Amended Complaint, filed on January 13, 2021, asserts that Defendants violated the FLSA and the OMFWSA by: (1) failing to pay their home health aides for time spent traveling between clients' homes during their shift in a single workday; (2) failing to include shift differential pay in home health aides' regular rates of pay for the purposes of calculating overtime; and (3) failing to reasonably reimburse home health aides for the use of their own vehicle to travel between client homes. (*See* Amended Complaint, Doc. No. 11)

Counts One, Three, and Five of the Amended Complaint seek relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Named Plaintiffs pursue these FLSA claims on behalf of themselves and all other similarly situated employees as a representative action under the FLSA's opt-in provision, 29 U.S.C. § 216(b).  Plaintiffs' proposed collectives are defined as:

> **<u>FLSA Travel Time Collective</u>: All current and former hourly paid employees of Defendants who, between February 11, 2018[4] and [the date Defendants changed their travel policy to include hourly payment for travel time], worked in excess of 40 hours per workweek and were required to travel between clients' homes.**

> **<u>FLSA Shift Differential Collective</u>: All current and former hourly paid employees of Defendants who, between February 11, 2018 and the present, worked in excess of 40 hours per workweek and received shift differential pay.**

> **<u>FLSA Minimum Wage Collective</u>: All current and former hourly paid employees of Defendants who, between February 11, 2018 and [the date Defendants changed their travel policy to include hourly payment for travel time], were required to travel  between clients' homes using their own vehicle.**

---

[4] This date represents three years prior to the filing of the instant motion.

Named Plaintiffs, for themselves and on behalf of all others similarly situated seek an order from this Court: (1) conditionally certifying the proposed collectives under Section 216(b) of the FLSA; (2) approving Plaintiffs' proposed Court-supervised Notice to Putative Collective members[5] and Court-supervised Reminder Notice;[6] and (3) ordering Defendants to identify putative collective members within fourteen (14) days of entry of the order by providing a list in electronic and importable format, of all current and former employees who meet any one or more of the collective definitions proposed by Plaintiffs. For each such individual, Defendants should include the individual's name, last known address, e-mail address(es), phone number(s), dates of employment, and position(s) held within fourteen (14) days of the entry of the order. Plaintiffs request that this Court approve an opt-in period of 60 days.

## II.    FACTUAL BACKGROUND

### A.    Defendants' Business Operations & Pay Practices

Defendants are in the business of providing home healthcare services to clients in the southern Ohio region. (Amended Complaint ¶ 21; Declaration of Plaintiff Calvin Marcum, attached as Exhibit C, ¶ 3)  Defendants' primary office is located in Proctorville, Ohio.  (Amended Complaint ¶ 22) During the relevant time periods, Defendants employed approximately 50 or more "home health aides" at any given time, which include non-licensed care givers, Licensed Practical Nurses, and Registered Nurses.  (Amended Complaint ¶ 25; Marcum Dec. ¶ 3, 4)  Home health aides are responsible for providing home care to Defendants' clients. (Amended Complaint ¶ 25; Marcum Dec. ¶ 6)

---

[5] The proposed Notice is attached hereto as Exhibit A.

[6] The Reminder Notice is attached hereto as Exhibit B.

Defendants' home health aides are paid on an hourly basis. (Amended Complaint ¶ 26; Marcum Dec. ¶ 7; Declaration of Plaintiff Larry Holder, attached as Exhibit D, ¶ 5; Declaration of Plaintiff Jessica Vanwinkle, attached as Exhibit E, ¶ 5)  Home health aides are not exempt from the overtime mandates of the FLSA or Ohio law. (Amended Complaint ¶ 27) While employees' shifts and job duties vary slightly depending on their position and the clients' needs, they regularly work more than 40 hours in a single workweek. (Amended Complaint ¶ 28; Marcum Dec. ¶ 8; Holder Dec. ¶ 6; Vanwinkle Dec. ¶ 6)  However, home health aides are not compensated at the correct overtime premium rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. (Amended Complaint ¶ 29; Marcum Dec. ¶ 9; Holder Dec. ¶ 7; Vanwinkle Dec. ¶ 7)  Home health aides receive an hourly premium, or "shift differential," for certain hours worked in the late evenings, early mornings, and on weekends. (Amended Complaint ¶ 30; Marcum Dec. ¶ 10)  Defendants  do not include the shift differential pay in determining the regular rate of pay for purposes of calculating overtime. (Amended Complaint ¶ 31) This results in a miscalculation of their overtime rate and under payment of their overtime hours worked in excess of 40 in a workweek. (Amended Complaint ¶ 31; Marcum Dec. ¶ 11)

In addition, home health aides are assigned to work for clients located throughout southern Ohio, and they are often required to travel between multiple clients' homes during a single shift. (Amended Complaint ¶ 32; Marcum Dec. ¶ 12; Holder Dec. ¶ 10; Vanwinkle Dec. ¶ 10) Employees' travel requirements vary, but they typically travel between two and four client homes per shift. (Amended Complaint ¶ 33; Marcum Dec. ¶ 12; Holder Dec. ¶ 10; Vanwinkle Dec. ¶ 10) The employees' driving time between clients typically takes between 15 and 30 minutes, but it can take up to 60 minutes depending on the client's location and traffic. (Amended Complaint ¶ 34; Marcum Dec. ¶ 12; Holder Dec. ¶ 10; Vanwinkle Dec. ¶ 10)  Home health aides often drive up to

3

or in excess of 100 miles per week traveling between clients' homes. (Amended Complaint ¶ 34; Marcum Dec. ¶ 14; Holder Dec. ¶ 12; Vanwinkle Dec. ¶ 12) Home health aides are also occasionally required to drive Defendants' clients on various errands using their own vehicles. (Amended Complaint ¶ 35; Marcum Dec. ¶ 12)

Defendants require their home health aides to maintain and pay for operable, safe, and legally compliant automobiles to travel to Defendants' clients' homes and provide transportation for clients. (Amended Complaint ¶ 36; Marcum Dec. ¶ 13; Holder Dec. ¶ 11; Vanwinkle Dec. ¶ 11) Defendants require their home health aides to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, and other equipment necessary for them to travel to clients' homes and complete their job duties. (Amended Complaint ¶ 37; Marcum Dec. ¶ 13; Holder Dec. ¶ 11; Vanwinkle Dec. ¶ 11) As a result, home health aides have purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, and automobile insurance, and suffered automobile depreciation for the primary benefit of Defendants. (Amended Complaint ¶ 37; Marcum Dec. ¶ 13; Holder Dec. ¶ 11; Vanwinkle Dec. ¶ 11)

Prior to approximately January 2020[7], Defendants did not compensate home health aides for their time spent driving between clients' homes. (Amended Complaint ¶ 38; Marcum Dec. ¶ 15; Holder Dec. ¶ 13; Vanwinkle Dec. ¶ 13) Instead, home health aides only received a flat rate of $0.25 per mile for this time. (Amended Complaint ¶ 38; Marcum Dec. ¶ 15; Holder Dec. ¶ 13; Vanwinkle Dec. ¶ 13) Prior to January 2020, the $0.25[8] mileage reimbursements paid to

---

[7] A lawsuit was filed by a home health aide against Defendants in September 2019 alleging unpaid travel time. *See Reynolds v. A & L Home Care and Training Center, LLC, et al.*, Case No. 1:19-cv-735 (S.D. Ohio 2019) Doc. No. 1. The lawsuit was resolved and dismissed in December 2019. *Id.* at Doc. No. 12.

[8] The actual amount received by individuals is actually less than $0.25 because Defendants withhold taxes on the payment rather than pay it as an untaxed reimbursement.

Defendants' employees were less than the IRS standard mileage reimbursement rate that reasonably approximates an individual's automobile expenses, including the cost of depreciation for each mile the vehicle is driven, for each applicable year. (Amended Complaint ¶ 40–41) At all times relevant herein, home health aides were paid an hourly rate that is equal to or slightly above the applicable state and federal minimum wage. (Amended Complaint ¶ 42; Marcum Dec. ¶ 7; Holder Dec. ¶ 5; Vanwinkle Dec. ¶ 5) Because Defendants pay their home health aides a gross hourly wage of at or near minimum wage, and because these employees have incurred unreimbursed vehicle expenses, these employees have "kicked back" to Defendants an amount sufficient to reduce their respective hourly rates of pay below minimum wage. (Amended Complaint ¶ 43) In addition to or in conjunction with the preceding "kick back," Defendants' failure to pay their home health aides during their compensable travel time between client homes also resulted in their hourly rates of pay falling below the applicable minimum wage. (Amended Complaint ¶ 44) Defendants' failure to pay their home health aides for compensable travel time and their failure to include shift differentials in the calculation of employees' overtime premium rates has also resulted in a failure to compensate home health aides at the correct overtime premium rate of pay for all hours worked in excess of 40 in a workweek. (Amended Complaint ¶ 45)

**B.   Named Plaintiffs' Employment Experiences**

Named Plaintiffs are all former home health aides employed by Defendants. (Holder Dec. ¶ 2–3; Marcum Dec. ¶ 2, 5; Vanwinkle Dec., ¶ 2–3) Named Plaintiffs were paid on an hourly basis throughout their employment with Defendants, and each Named Plaintiff was paid at or slightly above the applicable Ohio minimum wage. (Holder Dec. ¶ 5; Marcum Dec. ¶ 7; Vanwinkle Dec., ¶ 5) In addition, each Named Plaintiff regularly worked more than 40 hours in a workweek throughout their employment with Defendants. (Holder Dec. ¶ 6; Marcum Dec. ¶ 8; Vanwinkle

5

Dec., ¶ 6) However, Defendants failed to properly pay Named Plaintiffs overtime compensation at the correct premium rate for all hours worked in excess of 40 per workweek throughout their employment with Defendants. (Amended Complaint ¶ 45) Defendants also failed to properly pay Plaintiffs the applicable minimum wage for all hours worked. (Amended Complaint ¶ 43–44)

Throughout their employment with Defendants, each Named Plaintiff received a shift differential hourly premium of approximately $0.25 for hours worked in the late evening, early morning, and/or on weekends. (Holder Dec. ¶ 8; Marcum Dec. ¶ 10; Vanwinkle Dec., ¶ 8) However, Defendants failed to include the shift differential rates in the regular rate of pay when calculating their overtime premium rate for hours worked in excess of 40 in a workweek. (Holder Dec. ¶ 9; Marcum Dec. ¶ 11; Vanwinkle Dec., ¶ 9) Named Plaintiffs were also required to travel between multiple clients' homes during a single shift in a workday using their personal vehicles. (Holder Dec. ¶ 10; Marcum Dec. ¶ 12; Vanwinkle Dec., ¶ 10) Named Plaintiffs made approximately 2–4 trips between clients per shift on average, each of approximately 15–30 minutes in duration. (Holder Dec. ¶ 10; Marcum Dec. ¶ 12; Vanwinkle Dec., ¶ 10) In addition, Named Plaintiffs were occasionally required to drive Defendants' clients on various errands using their own vehicles. (Holder Dec. ¶ 10; Marcum Dec. ¶ 12; Vanwinkle Dec., ¶ 10)

Named Plaintiffs regularly drove in excess of 100 miles per workweek traveling between Defendants' clients and providing transportation. (Marcum Dec. ¶ 14; Holder Dec. ¶ 12; Vanwinkle Dec. ¶ 12) However, prior to January 2020, Named Plaintiffs were not compensated for this travel time; instead, they were only paid approximately $0.25 per mile driven. (Amended Complaint ¶ 38; Holder Dec. ¶ 13; Marcum Dec. ¶ 15; Vanwinkle Dec. ¶ 13) Defendants did not request or require Named Plaintiffs to track their automobile expenses, and Named Plaintiffs were

not compensated for vehicle maintenance beyond the $0.25 per mile reimbursement from Defendants. (Holder Dec. ¶ 14; Marcum Dec. ¶ 16; Vanwinkle Dec., ¶ 14)

## III.    FLSA CONDITIONAL CERTIFICATION

### A.    Courts in the Sixth Circuit Apply a Lenient Standard When Conditionally Certifying an FLSA Collective Action.

The FLSA generally requires employers to pay their employees at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. *See* 29 U.S.C. §207(a)(1).  Further, the FLSA also requires employers to pay their employees no less than the applicable minimum wage for all hours worked.  *See* 29 U.S.C. §206.  Section 216(b) of the FLSA provides that an "action . . . may be maintained against any employer . . . in any Federal or State Court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The commencement of a representative action under § 216(b) does **not** toll the running of the 2- to 3-year statute of limitations period applicable to FLSA actions for similarly situated plaintiffs. *See* 29 U.S.C. § 216(b); *Stout v. Remetronix, Inc*., 2013 U.S. Dist. LEXIS 112563, *6 (S.D. Ohio Aug. 9, 2013).

When determining whether a lawsuit may proceed as a collective action, courts typically use a two-tiered certification approach. *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 864 (S.D. Ohio 2005). In recognition of the judicial efficiencies and cost-saving benefits of collective actions, courts in the Sixth Circuit follow this two-step approach when deciding whether the named plaintiffs are similarly situated for the purpose of certifying a collective action. *See O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 582–83 (6th Cir. 2009)  The first stage, known as the "notice stage," occurs "at the beginning of discovery."  *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 U.S. Dist. LEXIS 39794, *9 (E.D. Mich. 2012) (*citing Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006)); *see also Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 U.S. Dist. LEXIS

142050, *5 (S.D. Ohio 2011). At this stage, the court determines whether the suit should be "conditionally certified" as a collective action so that potential opt-in plaintiffs can be informed of the pending lawsuit and of their right to participate. *Comer*, 454 F.3d at 546–47 (holding that "[t]he court must first consider whether plaintiffs have shown that the employees to be notified are, in fact, 'similarly situated'"); *see also Lacy* at *6 ("Conditional certification is meant only to aid in identifying similarly situated employees."). The second stage, known as the "decertification stage," occurs *after* discovery is complete and is reached if the defendant moves to decertify the class. *See e.g.*, *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010) (the final certification decision is made at the second stage, "after all of the opt-in forms have been received and discovery has concluded"). This case is currently in the notice stage because discovery has not yet commenced.

### 1. <u>The Notice Stage</u>

The threshold issue at the notice stage is whether the plaintiffs have successfully set forth evidence of a class of "similarly situated" potential plaintiffs. *Lacy* at *5 (citing *Comer*, 454 F.3d at 546). At this stage, the court does not conclude whether a class of similarly situated plaintiffs actually exists; rather, it determines whether the plaintiffs have made a "modest factual showing" of similar situations which justifies sending notice to potential plaintiffs of the suit. *Id.* (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002); *see also Lewis, et al. v. Huntington Nat. Bank*, 789 F. Supp.2d 863, 867 (S.D. Ohio 2011) ("Plaintiffs must only make a modest showing that they are similarly situated to the proposed class of employees"). Individuals are "similarly situated" for purposes of the FLSA if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2014 U.S. Dist. LEXIS 123409, *6 (S.D. Ohio Sept. 4, 2014). "[T]he plaintiff must

show only that 'his position is similar, not identical to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546–47 (quoting *Pritchard*, 210 F.R.D. at 595); *see also Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-00027, 2014 U.S. Dist. LEXIS 119586, *7 (S.D. Ohio Aug. 27, 2014) (plaintiffs' "claims and damages do not have to be identical"). To secure conditional certification of their collective action, plaintiffs may rely on pleadings and supplementary materials such as affidavits and other supporting documents. *See Shipes* at *10 (noting that "at this stage courts typically conditionally certify a representative class because the court has only minimal evidence before it—the pleadings and affidavits submitted by the parties").

Although the term "similarly situated" is not explicitly defined in the Sixth Circuit, courts have held that plaintiffs are similarly situated if they were subjected to a "unified policy" of violations or if their claims are "unified by common theories of defendants' statutory violations." *E.g., O'Brien*, 575 F.3d at 584; *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 213 (S.D. Ohio 2012).

This Court should conditionally certify the FLSA collectives defined as follows:

> **FLSA Travel Time Collective**: All current and former hourly paid employees of Defendants who, between February 11, 2018[9] and [the date Defendants changed their travel policy to include hourly payment for travel time], worked in excess of 40 hours per workweek and were required to travel between clients' homes.
>
> **FLSA Shift Differential Collective**: All current and former hourly paid employees of Defendants who, between February 11, 2018 and the present, worked in excess of 40 hours per workweek and received shift differential pay.
>
> **FLSA Minimum Wage Collective**: All current and former hourly paid employees of Defendants who, between February 11, 2018 and [the date Defendants changed their travel policy to include hourly payment for travel time], were required to travel between clients' homes using their own vehicle.

---

[9] This date represents three years prior to the filing of the instant motion.

At all times relevant herein, the proposed members of each of the above proposed FLSA Collectives have been subject to the same pay policies implemented by Defendants. (Amended Complaint ¶ 43–45) Regardless of job duties, job titles, pay rate, or shift schedules, Defendants paid all putative members of each of Plaintiffs' proposed FLSA Collective on an hourly basis. (Amended Complaint ¶ 26; Marcum Dec. ¶ 7; Holder Dec. ¶ 5; Vanwinkle Dec. ¶ 5) Moreover, putative members of each FLSA Collective have also been subject to the same violations:

### a.  *FLSA Travel Time Collective Members*

FLSA Travel Time Collective members are frequently required to travel between multiple locations during a single shift in a workday. (Amended Complaint ¶ 32; Marcum Dec. ¶ 12; Holder Dec. ¶ 10; Vanwinkle Dec. ¶ 10)  FLSA Travel Time Collective Members also regularly work more than 40 hours in a single workweek. (Amended Complaint ¶ 28; Marcum Dec. ¶ 8; Holder Dec. ¶ 6; Vanwinkle Dec. ¶ 6) Prior to approximately January 2020, Defendants failed to pay FLSA Travel Time Collective members for all time spent traveling between clients' homes during their shift in a single workday. (Amended Complaint ¶ 45; Holder Dec. ¶ 13; Marcum Dec. ¶ 15; Vanwinkle Dec. ¶ 13) FLSA Travel Time Collective members only received a mileage reimbursement of approximately $0.25 per mile during this travel time, resulting in a loss of overtime pay for hours worked during compensable travel time. (Amended Complaint ¶ 45; Holder Dec. ¶ 14; Marcum Dec. ¶ 15; Vanwinkle Dec. ¶ 14; *see also Lewis v. Sentry Elec. Grp., Inc.*, No. 1:19-cv-00178, 2020 U.S. Dist. LEXIS 381, *5–6 (S.D. Ohio Jan. 2, 2020) (holding travel time is compensable when it cuts across employee's workday).

### b.  *FLSA Shift Differential Collective Members*

FLSA Shift Differential Collective members receive a shift differential which increases their hourly rate of pay for certain hours worked in the late evening, early morning, and/or on

10

weekends. (Amended Complaint ¶ 30; Holder Dec. ¶ 8; Marcum Dec. ¶ 10; Vanwinkle Dec. ¶ 8) FLSA Shift Differential Collective members also regularly worked more than 40 hours in a single workweek. (Amended Complaint ¶ 28; Marcum Dec. ¶ 8; Holder Dec. ¶ 6; Vanwinkle Dec. ¶ 6) Defendants have failed to include shift differential pay in FLSA Shift Differential Collective members' regular rates of pay for the purposes of calculating overtime in violation of the FLSA. (Amended Complaint ¶ 45; Marcum Dec. ¶ 11; *see* 29 U.S.C. § 207(e); *Funk v. Airstream, Inc*., No. 3:17-cv-260, 2018 U.S. Dist. LEXIS 82666, *2–3 (S.D. Ohio May 16, 2018) (holding regular rate must include all remuneration for employment).

### c.        *FLSA Minimum Wage Collective Members*

FLSA Minimum Wage Collective members frequently travel between multiple locations during a single shift in a workday. (Amended Complaint ¶ 32; Marcum Dec. ¶ 12; Holder Dec. ¶ 10; Vanwinkle Dec. ¶ 10)  FLSA Minimum Wage Collective members are also required to use their own vehicle to travel to Defendants' clients' homes and provide transportation for clients. (Amended Complaint ¶ 36; Marcum Dec. ¶ 13; Holder Dec. ¶ 11; Vanwinkle Dec. ¶ 11) Prior to approximately January 2020, members of the FLSA Minimum Wage Collective were not paid for time spent traveling between clients.  Instead, they received mileage reimbursements that are less than the IRS standard mileage reimbursement rate, that reasonably approximates an individual's automobile expenses for each mile the vehicle is driven, for each applicable year. (Amended Complaint ¶ 40–41)  As a result, FLSA Minimum Wage Collective members have incurred unreimbursed vehicle expenses and "kicked back" to Defendants an amount sufficient to reduce their hourly rates of pay below minimum wage. (Amended Complaint ¶ 43; *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, *7–8 (S.D. Ohio Nov. 5, 2019) (holding anti-kickback regulation in FLSA is violated when employees are required to spend a portion of

11

their wages earned on vehicle expenses associated with performing their job duties, thereby reducing the wages they earn "free and clear" below the federal minimum wage). Both the failure to pay employees for all hours worked and the kick-backs have resulted in members of the FLSA Minimum Wage Collective being paid less than minimum wage.

While members of each of the above FLSA collectives are paid differing hourly rates and work different shifts, the effect of Defendants' pay practices remain the same: Defendants deprive members of each of the above FLSA Collectives of proper minimum wage and/or overtime compensation. Thus, all current and former employee who meet one or more of the above proposed definitions whom Defendants have employed during the past three years are similarly situated and are entitled to notice of this action. As a practical matter, those current and former FLSA collective members will be foreclosed from participating in this case unless they receive notice.

### 2. <u>The Decertification Stage</u>

At the decertification stage, courts generally apply a higher level of scrutiny because the parties have developed a more complete factual record through discovery. *Wlotkowski*, 267 F.R.D. at 217. "If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Douglas v. GE Energy Reuter Stokes*, No. 1:07CV077, 2007 U.S. Dist. LEXIS 32449, *14 (N.D. Ohio Apr. 30, 2007); *see also Shipes* at *12. Defendants' rights are not prejudiced by early notice and conditional certification, because they will have the opportunity to move for decertification of the class upon completion of discovery. *See Myers et al. v. Marietta Memorial Hospital et al.*, 2016 U.S. Dist. LEXIS 109153, *18 (S.D. Ohio Aug. 17, 2016).

**B.** **When Deciding Motions for Conditional Certification, Courts in the Sixth Circuit do not Evaluate the Merits of the Claims or Individualized Allegations or Defenses.**

Consistent with the purpose of § 216(b) Notice, it is well established that in assessing whether Plaintiffs have met their burden to conditionally certify a collective, the Court does not consider the merits of the claims, resolve disputes of fact, or evaluate the credibility of the witnesses or testimony. *Struck v. PNC Bank N.A.*, No. 2:11-cv-00982, 2013 U.S. Dist. LEXIS 19444, *12 (S.D. Ohio Feb. 13, 2013) (citing *Swigart,* 288 F.R.D. at 214) ("At the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues."); *Creely v. HCR Manorcare, Inc*., 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011) ("[S]imilarly situated . . . does not touch upon the merits of plaintiffs' claims."). "It is not the role of the Court at this stage of the proceedings to decide the case on the merits. To do so at this juncture, when Plaintiffs have conducted little or no discovery, would be unfair." *Lacy* at *7-8. Thus, this Court should refuse to consider any argument from Defendants at this stage regarding the merits of the case when determining whether to conditionally certify Plaintiffs' proposed collectives.

Further, at this first stage of the collective certification process, courts in this circuit do not evaluate individualized allegations or defenses. *E.g., Thompson v. Bruister & Assocs*., 967 F. Supp. 2d 1204, 1215 (M.D. Tenn. 2013). For example, in *Thompson*, the defendant argued that the plaintiff technicians were not similarly situated due to the differences in their job duties, their differences in pay structure, the fact that some received bonuses while others did not, that some worked overtime hours and were paid for it while others did not, and that some may not have valid claims under the Motor Carrier Act. *Id*. at 1215. The defendant argued that these differences would require individual day-by-day calculations to determine the amount, if any, each technician

13

was owed. *Id.* The Court refused to decertify the class, noting: "Although plaintiffs' claims may raise individualized questions regarding the number of hours worked and how much each employee was entitled to be paid, those differences go to the damages that each employee is owed, not to the common question of Defendants' liability." *Id.* (citing *Espinoza v. 953 Assocs. LLC,* 280 F.R.D. 113, 130 (S.D.N.Y. 2011)); *see also Jasper v. Home Health Connection, Inc*., No. 2:16-cv-125, 2016 U.S. Dist. LEXIS 71616, *13 (S.D. Ohio June 1, 2016) (certifying a class of home managers, caregivers, LPNs, home health aides, physical therapists, occupational therapist, aides, RN's, or other employee performing companionship services for defendant who worked more than 40 hours in a workweek). Plaintiffs have provided sufficient evidence at this stage for the Court to grant their request to conditionally certify the collectives.

## C.    This Court is Authorized to Issue Notice to Potential Opt-In Plaintiffs and Should do so Immediately.

Court-facilitated notice is appropriate in this case. This lawsuit provides the best mechanism for informing the potential opt-in Plaintiffs of their rights and providing them a forum to seek a remedy. Such collective adjudication in this case will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial resources. Requiring the potential opt-in Plaintiffs to file separate cases in this district court would not be an economic use of resources under the circumstances.

Named Plaintiffs have established that members of each of the proposed FLSA Collectives are similarly situated and meet this burden for the purpose of conditional certification under § 216(b) of the FLSA. The potential opt-in Plaintiffs in this case are all non-exempt, hourly paid current or former employees of Defendants and are similarly situated within the meaning the 29 U.S.C. § 216(b). Named Plaintiffs have submitted facts in the Amended Complaint and in their Declarations alleging that while working for Defendants, Defendants failed to properly pay them

14

and all other putative FLSA collective members overtime wages for all hours worked in excess of 40, failed to properly calculate the overtime rate, and failed to pay the minimum wage for all hours worked.  The Court should conditionally certify the proposed collectives based on the allegations as set forth in Plaintiffs' Amended Complaint and the three attached Declarations.

### D. The Court Should Approve Notice to be Provided to Current and Former Hourly Paid Employees who were Employed by Defendants During the Past Three Years.

The FLSA establishes a general two-year statute of limitations, but a cause of action arising out of a "willful" violation of the act increases the statute of limitations to three years. 29 U.S.C. § 255(a). A violation of the FLSA is "willful" when an employer either knows or shows reckless disregard as to whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988). Plaintiffs allege that Defendants' violation was willful because Defendants were aware, or should have been aware, that they were required to include hourly paid employees' shift differential pay in the calculation of their regular rates of pay for purposes of calculating overtime rates. (Complaint ¶ 141). Defendants were also aware, or should have been aware, that they were required to compensate their hourly paid employees for compensable travel time between clients' homes during the workday. (Amended Complaint ¶ 114)  This is further supported by the prior lawsuit filed in September 2019 by a home health aide for the same travel time at issue here. *See Reynolds v. A&L Home Care and Training Center, LLC, et al.*, No. 1:19-cv-00735-MRB (S.D. Ohio 2019)  Finally, Defendants were aware, or should have been aware, that they were required to reasonably reimburse their hourly paid employees for expenses associated with employees' use of their own vehicle to travel to clients' homes and provide transportation. (Complaint ¶  172)

Moreover, discovery related to Defendants' willfulness has not yet occurred. The question of whether alleged FLSA violations are "willful" are better suited for later stages of the litigation and courts in the Southern District of Ohio routinely use three-year limitations periods at the notice stage. *See Smith v. Generations Healthcare Servs. LLC*, No. 2:16-cv-807, 2017 U.S. Dist. LEXIS 106583, *17 (S.D. Ohio July 11, 2017) (citing *Stanley v. Turner Oil & Gas Props*., No. 2:16-cv-386, 2017 U.S. Dist. LEXIS 5434, *9 (S.D. Ohio Jan. 13, 2017) (using three-year limitations period for willful violations at notice stage); *Colley v. Scherzinger Corp*., 176 F. Supp. 3d 730, 735 (S.D. Ohio 2016) (finding the absence of willful conduct not established by the pleadings at the notice stage and using a three-year limitations period). Given the lenient standard employed at the conditional certification stage, it is appropriate to define the proposed collectives using a three-year look-back period. Thus, all current and former hourly paid employees of Defendants over the previous three years who meet one or more of the above FLSA collective definitions are entitled to receive notice of this action.

### E. The Court Should Approve Plaintiffs' Proposed Notice and Reminder Notice and Grant a 60-Day Opt-In Period for Additional Plaintiffs to Join the Litigation.

Named Plaintiffs request that the Court authorize them to send the attached Proposed Notice to all individuals in the proposed Collectives. (*See* Exhibit A) The Proposed Notice is "timely, accurate, and informative," and therefore should be approved. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Specifically, Plaintiffs request that the Court grant them permission to disperse notice to the putative class in two ways: (1) by ordinary mail, and (2) by electronic mail.

Accurate and timely notice regarding the pendency of the action "promotes judicial economy because it discourages putative collective members from filing numerous identical suits

16

and instead allows them to pursue their claims in one case where the same issues of law and fact are already being addressed." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011) (citing *Hoffmann–La Roche*, 493 U.S. at 170). Plaintiffs request to send the Court-authorized notice to current and former putative collective members by regular mail and by electronic mail. Last known addresses, especially for former employees, are far less accurate, and using electronic mail to disperse notice will increase the likelihood that putative collective members will receive notice, while reducing the total cost.

This method has been approved by courts in the Sixth Circuit on numerous occasions. *See, e.g., v. Hawkins Extended Life Home Care, Ltd.*, No. 2:18-cv-344, 2019 U.S. Dist. LEXIS 30887, *9 (S.D. Ohio 2019) (noting that the trend has been to permit sending notice by regular mail and email to ensure potential plaintiffs receive notice of the pending FLSA action); *Slaughter v. Lincoln Elec. Co.,* No. 1:18-cv-2705, 2019 U.S. Dist. LEXIS 173762, *27 (N.D. Ohio Oct. 7, 2019) ("[T]he Notice shall be sent to the potential opt-ins within thirty (30) days using the home and email addresses provided by the Defendant."); *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 U.S. Dist. LEXIS 164312, *32 (S.D. Ohio Sept. 25, 2019) ("The Court is mindful of the need to balance affording putative class members the opportunity to participate in the collective action while not badgering them to do so. Accordingly, the Court permits the Notice and Consent form to be sent via U.S. mail and e-mail to all putative class members."); *Abner v. Convergys Corp.,* No. 1:18-cv-442, 2019 U.S. Dist. LEXIS 62597, *18 (S.D. Ohio Apr. 11, 2019) (permitting plaintiffs to send notice by postal mail and e-mail to putative class members over defendant's objection); *Smyers v. Ohio Mulch Supply, Inc.,* No. 2:17-cv-1110, 2019 U.S. Dist. LEXIS 1815, *11 (S.D. Ohio Jan. 4, 2019) (approving plaintiff's request to send notice via U.S. mail, email and telephone).

In addition, Plaintiffs also request that the Court permit them to send a Court-authorized reminder email and text message to all proposed putative class members half-way through the notice period.  (*See* Exhibit B).[10]  It is well-documented that people often disregard collective action notices.  *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, & Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008).  "Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in . . . a reminder notice is appropriate." *Morris v. Lettire Constr. Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012).  Reminder mailings to potential opt-ins who have not responded to an initial mailing are commonly approved by courts across the country and cause defendants no prejudice.  *See, e.g.*, *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 879 (S.D. Ohio 2017) ("Plaintiff is authorized to serve the Reminder through the same means it served the Notice: by first class mail to current employees and by first class mail and electronic mail to former employees.");  *Benedict v. Hewlett-Packard Co.*, No. 13-cv-119, 2014 U.S. Dist. LEXIS 18594, *14 (N.D. Cal. Feb. 13, 2014) (approving reminder notice); *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 U.S. Dist. LEXIS 135926, *16 (S.D.N.Y. Sept. 20, 2013) (approving reminder notice); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (approving reminder postcard); *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-5428, 2007 U.S. Dist. LEXIS 83147, *14 (N.D. Cal. Oct. 30, 2007) (ordering the mailing of a "reminder card" to all class members who did not submit a claim form 14 days before the end of the claims period).

Moreover, "many Americans use text messages as their primary contact and access text messages much more than they would email or regular mail. 'The reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks,

---

[10] Plaintiffs propose that their counsel meet and confer with counsel for Defendants to determine and agree to the contents of the reminder text message.

however, check their text messages regularly.'" *Yates v. Checkers Drive-in Rest., Inc*., No. 17 C 9219, 2020 U.S. Dist. LEXIS 205241, *9–10 (N.D. Ill. Nov. 3, 2020) (citing *Lawrence v. A-1 Cleaning & Septic System Sys., LLC*, 2020 U.S. Dist. LEXIS 74685, *5 (S.D. Tex. Apr. 28, 2020)). To achieve the highest possible response rate among potential class members, notice by electronic means must be utilized "to the fullest extent possible." *Id.* at *9; *see also Dickensheets v. Arc Marine, LLC*, 440 F. Supp.3d 670, 672 (S.D. Tex. Feb. 19, 2020) (authorizing notice by text message); *M.A. by Ashear v. NRA Grp., LLC*, 2019 U.S. Dist. LEXIS 93444, *2 (E.D.N.Y. June 4, 2010) (our "primary methods of communication have evolved" to include text messages).

In order to facilitate timely and orderly notice to all putative FLSA collective members, Plaintiffs request that the Court order Defendants to identify all potential opt-in plaintiffs for each proposed class within 14 days of entry of the Order conditionally certifying the classes. Plaintiffs request that Defendants provide, in an Excel spreadsheet: full name, last known mailing address, last known e-mail addresses, last known telephone number, dates of employment, and position(s) held. *See Hawkins* at *10 (ordering defendant provide to Plaintiff an Excel spreadsheet containing the names, positions of employment, last known mailing addresses, last known telephone numbers, email addresses, work location(s), and dates of employment); *Perez v. A+ Bldg. Maint. & Home Repair, LLC*, No. 3:17CV01261, 2018 U.S. Dist. LEXIS 72808, *20 (N.D. Ohio Apr. 30, 2018) (ordering defendants to provide within 14 days of the Court's order employees' name, last known addresses, emails, and phone numbers, dates of employment and positions held). This information is necessary to facilitate effective notice to those employees who need to receive notice in order to exercise their right to opt in if they so choose. *Hoffman La-Roche*, 493 U.S. at 170.

The Court should allow for an opt-in period of at least sixty (60) days.  Given the current pandemic,[11] this opt-in period is necessary in order to locate potential members of the collective class who are currently employed or were previously employed by Defendant, and who may have moved to other locations to look for employment. *See Sutton v. Diversity at Work Grp., Inc*., 2020 U.S. Dist. LEXIS 235617, *11-12 (S.D. Ohio Dec. 15, 2020) (approving a 60-day opt-in period given the current pandemic). Sixty (60) days does not unreasonably prolong or delay the proceedings, especially if the parties commence discovery during the notice period.

## IV.   CONCLUSION

For the reasons set forth herein, Named Plaintiffs respectfully request the relief set forth above.

Respectfully submitted,

*/s/ Greg R. Mansell*
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
Rhiannon M. Herbert (0098737)
(*Rhiannon@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614
*Counsel for Plaintiffs*

---

[11] At the top of United States Postal Service's website, it provides an alert that states, "USPS is experiencing unprecedented volume increases and limited employee availability due to the impacts of COVID-19. We appreciate your patience…." See *https://www.usps.com/* (last visited February 11, 2021).

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on February 11, 2021, a copy of the foregoing motion and attachments was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

                                       /s/ *Greg R. Mansell*_____

                                       Greg R. Mansell (0085197)