**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| LARRY HOLDER, et al., on behalf of themselves and others similarly situated, | : | Case No. 1:20-cv-757 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| A&L HOME CARE AND TRAINING CENTER, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
CONDITIONALLY CERTIFY COLLECTIVE ACTION (Doc. 17)**

---

Before the Court is a motion to conditionally certify a collective action pursuant to

29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") (Doc. 17). Plaintiffs seek (1)

conditional certification of three collectives, (2) approval of their proposed court-

supervised notice and reminder notice, and (3) an order issued to Defendants to identify

putative collective members. (*Id.* at 2.) Defendants filed a response in opposition. (Doc.

19.) Plaintiffs filed a reply. (Doc. 20.) The Court granted leave for Defendants to file a

surreply. (Doc. 26.) This matter is ripe for review.

For the reasons below, the Court conditionally certifies two of Plaintiffs' three

proposed collectives. An order such as this one is not typically appealable. But this order

presents two controlling questions of law as to which there is substantial ground for a

difference of opinion: (1) whether a district court is bound to follow the two-step

1

certification process created in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987), and (2) whether a district court should consider arbitration agreements when conditionally certifying a FLSA collective. Because an immediate appeal may materially advance the ultimate termination of the litigation, the Court certifies this decision for interlocutory appeal under 28 U.S.C. § 1292(b).

## FACTS

Defendant A&L Home Care and Training Center employs home health aides who provide home health care for the company's clients. (Amended Compl., Doc. 11, ¶¶ 21, 25.) The named plaintiffs are former A&L home health aides. (*Id.* at ¶¶ 46, 65, 83.) Home health aides are paid by the hour. (*Id.* at ¶ 26.) Plaintiffs allege that they regularly worked more than 40 hours in a single workweek, but were not paid the correct overtime rate of time-and-a-half. (*Id.* at ¶¶ 28, 29.) They received a shift differential rate—a sort of hourly premium—for hours spent working during the early mornings, late evenings, and weekends. (*Id.* at ¶¶ 30, 51, 70, 88.) But A&L did not include their shift differential rates in the calculation of their overtime worked in excess of 40 hours per week. (*Id.* at ¶ 31.)[1] Plaintiffs also claim that they were regularly required to travel between multiple clients' homes during a single shift. (*Id.* at ¶ 32.) Instead of receiving credit for their time spent driving, however, they received a flat rate of $0.25 per mile. (*Id.* at ¶ 38.)

These experiences form the bases for Plaintiffs' request for the court to conditionally certify three collectives (collectively, "Putative Collective Members"):

---

[1] At this stage in the litigation, Plaintiffs have not fully clarified their theory underlying their shift differential allegations, but such clarification is not necessary to resolve the present motion.

*FLSA Travel Time Collective*: All current and former hourly paid employees of Defendants who, between February 11, 2018 and [the date Defendants changed their travel policy to include hourly payment for travel time], worked in excess of 40 hours per workweek and were required to travel between clients' homes.

AND

*FLSA Shift Differential Collective*: All current and former hourly paid employees of Defendants who, between February 11, 2018 and the present, worked in excess of 40 hours per workweek and received shift differential pay.

AND

*FLSA Minimum Wage Collective*: All current and former hourly paid employees of Defendants who, between February 11, 2018 and [the date Defendants changed their travel policy to include hourly payment for travel time], were required to travel between client's homes using their own vehicle.

(Motion, Doc. 17 at 1-2.)   In addition, Plaintiffs ask the Court to approve their proposed court-supervised notice and reminder notice to the Putative Collective Members.  They request that the Court order Defendants to identify Putative Collective Members within 14 days of entering this Order.  Lastly, Plaintiffs request an opt-in period of 60 days.

## ANALYSIS

### A. Conditional certification

When an employer is alleged to have violated the FLSA, § 216(b) of that statute permits employees to sue on their own behalf as well as on behalf of other "similarly situated" employees.  The pertinent text reads this way:

Any employer who violates the [minimum wage or overtime provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as

3

> liquidated damages. . . . An action to recover [for such] liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This provision establishes two requirements for a representative action: plaintiffs must (1) "actually be 'similarly situated;'" and (2) "signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

In FLSA collective actions, certification generally occurs in two stages: conditional and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). Conditional certification takes place at the beginning of discovery. *Morse v. NTI Servs., Corp.*, No. 2:20-CV-2173, 2020 WL 5407974, at *2 (S.D. Ohio Sept. 9, 2020). At this "notice stage," plaintiffs need only make a modest factual showing that they are similarly situated to the proposed class of employees. *Comer*, 454 F.3d at 546; *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011). We use a "fairly lenient standard" that usually results in conditional certification of a representative class. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). If plausible grounds exist and a court grants conditional certification, then the plaintiffs may send opt-in notices to current and former employees who potentially satisfy the definition of the collective. *Morse*, 2020 WL 5407974, at *3.

After the collective plaintiffs have opted in and discovery concludes, final certification occurs. *Id.* (citing *Comer*, 454 F.3d at 546). At this second stage, district courts

4

examine more closely whether particular members of the class are, in fact, similarly situated. At that point, the court has much more information and employs a stricter standard. *Comer*, 454 F.3d at 547. Final certification will depend on more than simple allegations and affidavits to demonstrate similarity. *Frye*, 495 F. App'x at 671. Alternatively, the defendant may move to decertify the class at the second stage, if it is appropriate based on the individualized nature of a plaintiff's claims. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011).

Courts have applied different evidentiary standards when resolving motions for conditional certification of a FLSA collective action. The general requirement is that plaintiffs must show that the other employees to be notified are, in fact, similarly situated. *Comer*, 454 F.3d at 546. Mere allegations typically fail to satisfy the similarity requirement. *O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-22, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013). Courts generally require at least "some factual showing." *See Combs v. Twins Grp., Inc.*, No. 3:16-CV-295, 2016 WL 7230854, at *3 (S.D. Ohio Dec. 14, 2016). "While the evidentiary threshold for demonstrating that similarly situated employees exist is not high, a plaintiff must demonstrate a factual nexus—that is, something more than mere allegations—to warrant conditional certification and the delivery of notice to potential class members." *O'Neal*, 2013 WL 4013167, at *8.

Declarations may be enough to satisfy the similarity requirement at the conditional stage. *Couch v. Certified Flooring Installation, Inc.*, 439 F. Supp. 3d 964, 977 (S.D. Ohio 2020). To warrant a finding that similarly situated employees exist, a plaintiff's declaration "must at least allege facts sufficient to support an inference that she has *actual*

*knowledge*" about other employees' job duties, hours worked, and whether they were paid for overtime hours. *O'Neal*, 2013 WL 4013167, at *8. A declaration that contains facts that support the inference that the plaintiff has actual knowledge of company-wide employment practices—such as first-hand observations or observations with co-workers—will typically be enough to show that a similarly situated class of employees exists. *Id.*

Here, Plaintiffs propose three collectives. For support, they offer two rounds of declarations—one set of declarations with their motion, and another set with their reply brief. The Court will address each proposed collective individually.

### 1. Travel time collective

The travel time collective includes employees who, between the relevant dates, worked more than 40 hours per week and were required to travel between clients' homes. Defendants insist that Plaintiffs' failure to submit declarations from potential plaintiffs should weigh heavily against conditional certification. They also argue that Plaintiffs' declarations do not speak to any experiences of any A&L employees except for themselves. (Memorandum in Opposition ("MIO"), Doc. 19 at 5.)

Submissions by potential plaintiffs, such as affidavits of interest, are not a hard and fast requirement. *E.g.*, *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 875 (S.D. Ohio 2017). This Court has conditionally certified collection actions based only on declarations from named plaintiffs before. *Id.* Here, the declarations are from the named plaintiffs (and one dismissed plaintiff). They state that the plaintiffs "and other Home Health Aides" were required to attend an orientation when they were hired. (Second Holder

Decl., Doc. 20-1, ¶ 3; Second Marcum Decl., Doc. 20-2, ¶ 3; Second Vanwinkle Decl. Doc. 20-3, ¶ 3.)  At that orientation, they learned how to fill out time logs, keep track of time worked, and complete mileage reimbursement forms.  (Doc. 20-1 at ¶ 4; Doc. 20-2 at ¶ 4.)  They were told to record their shift start time as the time they first arrived at a client's home.  Their shift end time was when they left.  (Doc. 20-2 at ¶ 4.)  If they traveled to another client's home, they recorded only the miles driven between client locations.  (*Id.*; Doc. 20-1 at ¶ 4; Doc. 20-3 at ¶ 4.)  Brooke Clark, the former Schedule Supervisor, avers that home health aides frequently needed to travel from one client location to another.  They turned in their mileage forms to her.  The mileage forms were simply records of how many miles they drove—not how much time they spent driving between client locations.  (Clark Decl., Doc. 20-4, ¶ 11.)  Plaintiffs also submitted paystubs that show they were reimbursed for mileage.  (*See* Docs. 20-1, 20-2, 20-3.)

These statements and paystubs satisfy the lenient standard of making a modest factual showing that a similarly situated class of employees exists.  *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005).  The plaintiffs all state that they and other home health aides learned the same policy: to track miles but not the amount of time spent driving.  The key here is that *other employees* learned the same policy.  Since the plaintiffs attended the orientation themselves, they had firsthand knowledge that other employees also attended the orientation, where they learned the same policy of tracking miles but not time.  And, more than simply learning the policy, the paystubs support the statement that the employees were paid for mileage but not time.  The "mileage" line item tracks the number of miles an employee traveled during a given pay period.  It does

not appear to record the amount of time an employee spent on work-related commutes. Taken together, these facts support the inference that the plaintiffs have actual knowledge of company-wide employment practices and other employees' duties and pay structures. *See O'Neal*, 2013 WL 4013167, at *8. The evidence shows that the claim of nonpayment for travel time is not individual to Plaintiffs but, rather, potentially involves other employees too. *Id.* at *11.

For the above reasons, the Court grants in part Plaintiffs' motion to conditionally certify the travel time collective. The Court will address below the scope of the notice to be sent to this collective.

### 2.  Shift differential collective

The proposed shift differential collective includes employees who, between February 11, 2018 and the present, worked more than 40 hours per week and received shift differential pay. The shift differential pay was an increase on top of the employees' hourly rate for working less desirable shifts. Plaintiffs contend that Defendants failed to include the shift differential pay when adding up their hours to see if they were eligible for overtime. (Amended Compl., Doc. 11 at ¶ 45; Reply, Doc. 20 at 11.)

The declarations in support of conditional certification of the shift differential collective are largely inadequate. Two plaintiffs state that they received shift differential hourly premiums, but do not speak to whether other coworkers received shift differential pay. (First Holder Decl., Doc. 17-4 at ¶ 9; First Vankwinkle Decl., Doc. 17-5 at ¶ 9.) Since they do not say anything about *other* employees, they do not support any inference that similarly situated plaintiffs exist. The remaining plaintiff avers that A&L "failed to

8

include [the] shift differential rates" for both himself and "other home health aides in the calculation of the overtime premium rate of hours worked in excess of 40 in a workweek." (First Marcum Decl., Doc. 17-3 at ¶ 11.) But this merely restates the complaint's allegations. Such meager showings, by themselves, do not justify conditional certification. *See Combs*, 2016 WL 7230854, at *3.

Nevertheless, the evidentiary burden for conditional certification is "lenient" and "modest." *Harrison*, 411 F. Supp. 2d at 865. And, in the Brooke Clark declaration, there is one statement that addresses shift differentials and potential plaintiffs. As a Schedule Supervisor, Clark created and managed the schedule for home health aides. (Clark Decl., Doc. 20-4, ¶ 4.) She avers that all home health aides received a shift differential hourly premium for certain hours. (*Id.* at ¶ 20.) This policy, according to her, is set forth in A&L's employee manual. (*Id.*) As the scheduling supervisor, it is feasible that she would have actual knowledge of both the shift differential policy and other home health aides who received shift differential pay, consistent with the policy. (*Id.* at ¶ 20.) Although this "thin" basis for certification pushes the envelope of what constitutes a modest factual showing, it nevertheless suffices to satisfy the lenient burden of demonstrating that a similarly situated class of potential plaintiffs exists. *See Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 770 (N.D. Ohio 2015).

Accordingly, the Court grants in part Plaintiffs' motion to certify the shift differential collective. Again, the Court addresses below the scope of the notice period.

### 3. Minimum wage collective

The minimum wage collective includes hourly paid employees who, between the

relevant dates, were required to travel to clients' homes using their own vehicle. Each plaintiff avers that they had to travel between clients' homes during their shifts. They used their own vehicles and paid for gas, maintenance, and insurance. The only compensation they received was the $0.25 per mile reimbursement rate. (Doc. 17-3 at ¶¶ 12-15; Doc. 17-4 at ¶¶ 10-14; Doc. 17-5 at ¶¶ 8-13.) Clark states that home health aides used their personal vehicles to travel to clients' homes. (Doc. 20-4 at ¶ 13.)

All of these statements are simply re-allegations of the complaint. (Amended Compl., Doc. 11 at ¶¶ 35-38.) The evidence must set forth facts that enable a court to "reasonably infer the existence of other employees who were subject to the same wage and work hours policy as plaintiff." *Rembert v. A Plus Home Health Care Agency LLC*, No. 2:17-CV-287, 2018 WL 2015844, at *2 (S.D. Ohio May 1, 2018). Declarations that meet this standard "typically contain first-hand observations of employees at other locations, or other relevant evidence, showing a unified policy that applied to all employees." *Cook v. Brewster Cheese Co.*, No. 5:20-CV-0445, 2020 WL 5891904, at *5 (N.D. Ohio Oct. 5, 2020). The declarations here, however, only contain accounts that apply to the plaintiffs themselves. Here, even under the lenient evidentiary standard, these declarations do not contain facts showing that the plaintiffs had actual or even constructive knowledge that their coworkers also used their own vehicles to travel from client to client. *See Combs*, 2016 WL 7230854, at *3. A collective action cannot proceed on so little evidence. *Id.*

For these reasons, the Court denies Plaintiffs' motion as it relates to the minimum wage collective.

10

### 4. Defendants' challenge to the conditional certification framework

Defendants raise a challenge to the two-step certification process. They argue that the Court should reject that paradigm and instead apply the approach of a recent Fifth Circuit case. *See Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021) (Willet, J.). *Swales* held that, instead of adhering to the two-step conditional certification framework (with its lenient first stage), a district court "should rigorously enforce [the similarity requirement] at the outset of the litigation." *Id.* at 443.

The two-step process of certifying a collective comes from *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987). The Fifth Circuit expressly rejected *Lusardi* and its two-step certification regime. *Swales*, 985 F.3d at 434. It noted that the word "'certification,' much less 'conditional certification,' appears nowhere in the FLSA." *Id.* Rather, the only binding commands on district courts are (1) the FLSA's text declaring that only "similarly situated" individuals may opt-in to collective litigation and (2) the Supreme Court's admonition that a district court may facilitate notice to potential plaintiffs but not signal approval of the merits. *Id.* (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). And, as for the "similarly situated" inquiry, the evidentiary standard is rigorous, not lenient. *Id.*

Our circuit, it is true, does not appear to have expressly adopted *Lusardi*, although the circuit has acknowledged that district courts use the bifurcated certification framework. *See, e.g., Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) ("Courts typically bifurcate certification of FLSA collective action cases."); *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated on other grounds by Campbell-*

11

*Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ("The district court followed a two-stage certification process, as many courts do, to determine whether the opt-in plaintiffs and lead plaintiffs were similarly situated."). At most, the circuit has simply endorsed district courts' use of that two-stage approach. *E.g., White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). *See also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) (characterizing the Sixth Circuit's treatment of the two-step process as an endorsement). In any event, the circuit has recognized that the evidentiary standard at the conditional stage is "fairly lenient." *White*, 699 F.3d at 877.

Despite our circuit's apparent approval of certifying FLSA collectives in two stages, Defendants ask the Court to abandon that course in favor of the Fifth Circuit's recent *Swales* decision. The Court declines the invitation. Courts in this district routinely apply the two-step process in FLSA cases, albeit reaching different conclusions on the necessary evidentiary showing. *E.g., Harrison*, 411 F. Supp. 2d at 865. This Court, absent contrary direction from the Sixth Circuit, will follow the two-step process.

Nevertheless, Defendants' challenge of two-step certification raises issues that merit the Sixth Circuit's attention. For the reasons explained in more detail below, the Court certifies its conditional certification of the collective actions for immediate appellate review under 28 U.S.C. § 1292(b).

### B. Scope of notice

The Court must now determine how far back in time the notice should extend for the two collectives it certifies. Plaintiffs maintain that the Court should approve notice to be sent to potential plaintiffs who were employed during the past three years—from

February 2018 to the date Defendants changed their travel policy to include hourly payment for travel time. Defendants disagree as to both the start date and end date. They assert that notice should range from February 2019 (applying the default two-year statute of limitations) to November 2019 (when A&L employees allegedly signed arbitration agreements that waived their rights to pursue class action litigation (Ervin Decl., Doc. 19-1 at ¶ 12.)). Two questions thus arise: Should notice extend back two years or three years? And should employees who signed arbitration agreements receive notice?

### 1. Two years

First, the notice period will extend back two years. The FLSA provides for a two-year statute of limitations. If the cause of action arises out of a willful violation, however, the statute of limitations is three years. 29 U.S.C. § 255(a). A FLSA violation is "willful" if the employer knew or showed reckless disregard as to whether its conduct was unlawful. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 893 (S.D. Ohio 2004).

Plaintiffs allege that Defendants knew or should have known that they were required to pay their employees for compensable travel time and include the shift differential rates in the calculation of their respective overtime premium rates (Amended Compl., Doc. 11 at ¶¶ 114, 141.) The reason for this, they contend, is a prior lawsuit filed in September 2019. *See Reynolds v. A&L Home Care and Training Center, LLC, et al.*, No. 1:19-cv-735 (S.D. Ohio 2019).

Allegations of willfulness must be stronger than mere claims that a defendant "knew or had reason to know" of its alleged FLSA violations. *Scheck v. Maxim Healthcare*

13

*Servs., Inc.*, 333 F. Supp. 3d 751, 758 (N.D. Ohio 2018). As those are mainly what Plaintiffs rely on here, they are not enough. Reference to another lawsuit, but without offering any more facts, explanation, or analysis, does not carry the day either. To prove willfulness, a plaintiff needs to show that the defendant either acted with knowledge that a federal statute prohibited its conduct or acted with reckless disregard as to a federal law's requirements. *See Katoula v. Detroit Ent., LLC*, 557 F. App'x 496, 498 (6th Cir. 2014). Conclusory assertions do not suffice. *Id.* In citing the *Reynolds* lawsuit, Plaintiffs are essentially offering the conclusory assertion that, since A&L has been sued before, it must have known it was violating the law. But a plaintiff must rely on the strength of its own showing of willfulness. *See O'Brien*, 575 F.3d at 585 ("proof of a violation as to one particular plaintiff does not prove that the defendant violated any other plaintiff's rights under the FLSA"). Since Plaintiffs do not plead facts that make their willfulness position plausible on its face, mustering instead only conclusory assertions, they fail to show that Defendants acted willfully. *See Katoula*, 557 F. App'x at 498. Accordingly, the two-year statute of limitations applies. 29 U.S.C. § 255(a). Notice will extend back to February 11, 2019.

### 2. Arbitration agreements

That leads to the next question: whether notice should exclude employees who signed arbitration agreements. District courts generally note that consideration of arbitration agreements at the conditional certification is premature, as it raises merits questions. *Thomas v. Papa John's Int'l, Inc.*, No. 1:17CV411, 2019 WL 4743637, at *3 (S.D. Ohio Sept. 29, 2019); *Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2019 WL 4601930, at *7

(S.D. Ohio Sept. 23, 2019). The Sixth Circuit has not expressly decided whether district courts should consider the existence of arbitration agreements during the conditional certification phase. *See York v. Velox Express, Inc.*, --- F. Supp.3d ---, No. 3:19-CV-092, 2021 WL 918768, at *3 (W.D. Ky. Mar. 10, 2021); *Bradford v. Team Pizza, Inc.*, No. 1:20-CV-60, 2020 WL 3496150, at *5 (S.D. Ohio June 29, 2020), *report and recommendation adopted*, No. 1:20-CV-00060, 2020 WL 5987840 (S.D. Ohio Oct. 9, 2020). It has sometimes indicated that sending notice to opt-in plaintiffs with claims referable to arbitration is not necessarily problematic. *See Taylor v. Pilot Corp.*, 697 F. App'x 854, 860 (6th Cir. 2017). Yet, it has also noted, more recently and in a published decision, that although § 216(b) gives employees "the *option* to bring their claims together," the presence of arbitration agreements may limit those options: "employees who do not sign individual arbitration agreements are free to sue collectively, and those who do sign individual arbitration agreements are not." *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018)) (Thapar, J.). *See also Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 591 (6th Cir. 2014); *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606 (6th Cir. 2013).

The Fifth and Seventh Circuits have addressed how arbitration agreements apply to the certification process. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019). Both circuits arrived at a similar rule: Employers who wish to exclude a particular employee from receiving notice have the burden to show, by a preponderance of the evidence, that a valid arbitration agreement exists as to that employee. *Bigger*, 947 F.3d at 1050; *In re JPMorgan*, 916 F.3d at

15

502–03. When a preponderance of the evidence shows that a valid arbitration agreement exists, the court may not order notice to be sent to that employee. But if the employer fails to show that a valid arbitration agreement applies, that employee would receive notice. *Bigger*, 947 F.3d at 1050; *In re JPMorgan*, 916 F.3d at 503.

District courts in this circuit have applied the Fifth and Seventh Circuit decisions, but to different effect. In *Bradford v. Team Pizza, Inc.*, this Court considered whether an employer had shown by a preponderance of the evidence that valid arbitration arbitrations precluded employees from receiving notice. 2020 WL 3496150, at *5. The employer had submitted a sample arbitration agreement and a declaration stating that employees had signed it. But this evidence did not show that those agreements would be valid as to each employee who would otherwise receive notice. *Id.* So the Court did not consider the arbitration agreements at the conditional certification stage. *Id.* at *6.

Another court reached the opposite result on virtually identical facts. In *York v. Velox Express, Inc.*, an employer produced a representative sample of an agreement that included an individual arbitration agreement. --- F. Supp.3d ---, 2021 WL 918768, at *3. The employees did not contest that prospective collective members had signed such agreements. That court concluded that it would not permit notice to go to any otherwise eligible opt-in plaintiffs who had agreed to arbitration. *Id.* at *4. (But it did not foreclose the plaintiffs' opportunity to challenge the validity of any arbitration agreements. *Id.*)

Here, Defendants argue that notice should range from February 2019 to November 2019. (MIO, Doc. 19 at 18.) In support, they provide a declaration from their General Operations Manager, Heather Ervin, stating, "Since on or about November 2019, all of

16

A&L's employees have signed and have been subject to arbitration agreements that include a waiver of the right to pursue class action claims." (Second Ervin Decl., Doc. 19-1 at ¶ 12.) Clark has already been dismissed pursuant to an arbitration agreement she signed. (Stipulation, Doc. 10; First Ervin Decl. and Clark Arbitration Agreement, Doc. 9-1.) Plaintiffs do not deny the existence of other arbitration agreements. In fact, they concede that "[n]one of the FLSA Collective Definitions include individuals who have properly waived their right to participate in class and collective action litigation." (Motion, Doc. 17 at 1 n. 2.)

After careful consideration, the Court accepts the proposition of law that notice should not go to employees who have signed arbitration agreements. Arbitration agreements do not "become a nullity if an employee decides that he wants to sue collectively after signing one." *Gaffers*, 900 F.3d at 296. The collective action provision of the FLSA does not displace the requirement that courts enforce employees' agreements as written. *Id.* As it is within the Court's discretion whether and how to facilitate notice, *McGrew v. VCG Holding Corp.*, 735 F. App'x 210, 211 (6th Cir. 2018), the Court finds it inappropriate to issue opt-in notice to employees who have waived their ability to participate in the collective action. *See Gaffers*, 900 F.3d at 296; *In re JPMorgan*, 916 F.3d at 502–03; *Bigger*, 947 F.3d at 1050.

The burden of showing that valid arbitration agreements exist rests with Defendants. *See York*, 2021 WL 918768, at *4; *In re JPMorgan*, 916 F.3d at 502–03; *Bigger*, 947 F.3d at 1050. On the present record, however, the only employee Defendants have shown to have entered into a valid arbitration agreement is Brooke Clark. A single line

from a declaration stating that other A&L employees have signed arbitration agreements does not demonstrate the validity of those agreements. Moreover, the indeterminate date ("on or about November 2019") prevents the Court from being able to identify an appropriate cutoff date for the notice. Indeed, since it is individuals who sign arbitration agreements, the Court would need to make an individualized consideration of any arbitration agreements submitted. So it is not proper to cut the notice period short based on Defendants' current showing.

That does not mean, however, that the Court and the parties should disregard valid arbitration agreements that exist but have simply not been produced yet. If Defendants have arbitration agreements that may preclude certain employees from being able to join in these collective actions, then those agreements should be produced before notice is sent. Why? Because district courts' discretion to facilitate notice under § 216(b) is cabined to "*potential* plaintiffs." *Hoffmann-La Roche*, 493 U.S. at 169 (emphasis added). And employees who have waived their right, through an arbitration agreement, to participate in collective litigation are not *potential* plaintiffs. *See Gaffers*, 900 F.3d at 296 (citing *Epic*, 138 S.Ct. at 1624).

Defendants have already shown that at least one individual, and possibly more, would not be able to join this action. (Stipulation, Doc. 10; First Ervin Decl. and Clark Arbitration Agreement, Doc. 9-1.) And Plaintiffs concede that none of the collectives include individuals who have "properly waived their right to participate in class and collective action litigation." (Motion, Doc. 17 at 1, Pg. 239 n. 2.) In this case, then, it would be inefficient to first send notice to the entire collectives and then dismiss certain

18

individuals at the decertification stage because they have signed arbitration agreements. *See Bigger*, 947 F.3d at 1050. It better promotes judicial economy and adherence to *Hoffmann-La Roche* to avoid inviting individuals to opt in to collective litigation when an arbitration agreement *prevents them* from opting in to collective litigation.

Accordingly, to give effect to the FLSA's twin goals of enforcing the FLSA and efficiently resolving those disputes, *Bigger*, 947 F.3d at 1049, Defendants shall have the opportunity to produce evidence of arbitration agreements signed by Putative Collective Members. For those who are not otherwise subject to an arbitration agreement, and are thus potential plaintiffs, the notice periods shall be as follows: For the travel time collective, the notice period shall extend from February 11, 2019, to the date Defendants changed their travel policy to include payment for travel time. As Defendants have not made an issue of the latter (unspecified) date, the Court orders them within 14 days of this Order to file evidence that establishes the date they changed their travel policy to include payment for travel time. For the shift differential collective, the notice period shall extend from February 11, 2019 to February 11, 2021. But, again, for both collectives, Defendants have the opportunity to produce evidence of arbitration agreements signed by current and former employees limiting their ability to participate in collective litigation. Any employee who is subject to an arbitration agreement shall not receive notice.

One final note: As with the conditional certification issue above, the applicability of arbitration agreements to the conditional certification analysis warrants review by the Sixth Circuit. Accordingly, the Court also certifies this issue for interlocutory appeal

under § 1292(b), for reasons explained in more detail below.

### C. Court-supervised notice

Plaintiffs request approval of their revised proposed notice. (Doc. 20-5.) They wish to be able to send notice to Putative Collective Members by ordinary mail and by email. They also ask to be permitted to send a reminder mail and email. To facilitate the sending of notice, they request that Defendants provide contact information for the Putative Collective Members. They ask for an opt-in period of 60 days.

Courts may facilitate notice to putative members of a collective. *Swigart*, 276 F.R.D. at 214–15. In so doing, they must avoid communicating any encouragement to join the suit or approval of the merits. *Id.* (citing *Hoffman La-Roche*, 493 U.S. at 168-69). Notifying potential opt-in plaintiffs, in an accurate and timely way, that a collective action is pending promotes judicial economy by allowing potential collective members to pursue their claims in one case instead of in numerous identical suits. *Id.*

Plaintiffs' revised proposed notice will provide accurate and timely notice and promote judicial economy, but with one caveat: Because this Court is conditionally certifying only two of the three proposed collectives, the notice is deficient in that it contains at least one reference to the collective the Court is *not* certifying (employees who were required to use their own vehicle to travel to clients' homes). The final judicial notice must contain no mention of any collective the Court has not conditionally certified.

The means of notice—ordinary mail and email—are appropriate. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1075 (S.D. Ohio 2016). Reminder notice, however, will risk stirring up litigation and improperly suggesting the Court's

20

endorsement of the claims. *Id.* at 1074-75. As such, it is inappropriate in this instance and the Court will not allow it.

Counsel for Defendants shall, within 14 days, provide counsel for Plaintiffs with a spreadsheet that contains the following information for Putative Collective Members who have not waived their ability to participate in collective actions: full name, last known mailing address, last known email addresses, dates of employment, and position. They need not include employees' last known telephone numbers, since no reminder notice via text message will be sent. (Reply, Doc. 20 at 16.) As for the opt-in period, in light of this Court's "overwhelming acceptance" of opt-in periods up to 90 days, Plaintiffs' proposed 60-day opt-in period is reasonable. *Id.* at 1076.

### D. Interlocutory appeal

The Court certifies this Order for interlocutory appeal under § 1292(b). An order conditionally certifying collectives is not ordinarily immediately appealable. This matter, however, presents issues that warrant appellate review.

#### 1. Two-stage certification of FLSA collective actions

Defendants have expressly asked this Court to abandon the two-step certification process for FLSA collective actions, and to instead apply the Fifth Circuit's recent *Swales* decision which rejected that paradigm.

Neither party has shown, and this Court has not found, any Sixth Circuit authority *requiring* courts to certify FLSA collective actions in two stages. Bound up with bifurcated certification is the slight evidentiary showing required at the conditional certification step. While we have a "checklist," of sorts, when it comes to decertification, *Monroe v.*

21

*FTS USA, LLC*, 860 F.3d 389, 416 (6th Cir. 2017) (quoting *O'Brien*, 575 F.3d at 584) (Sutton, J., concurring in part and dissenting in part), the facts at the conditional certification stage need only be "modest" and the courts are "lenient." *Harrison*, 411 F. Supp. 2d at 865. In practice, then, bifurcated certification carries with it a bifurcated evidentiary standard. This, even though the "similarly situated" standard ostensibly applies at both stages. 29 U.S.C. § 216(b). A lenient review of the parties' evidence for conditional certification can be in tension with the requirement that the employees who are to receive notice be "*in fact*, 'similarly situated.'" *Comer*, 454 F.3d at 546 (emphasis added). Indeed, the district courts in our circuit have different ways of striking the balance. *See, e.g., Harrison*, 411 F. Supp. 2d at 865.

The Fifth Circuit, on the other hand, in dispensing with step-one conditional certification held that district courts "must rigorously scrutinize the realm of 'similarly situated' workers" at the beginning of the case. *Swales*, 985 F.3d at 434. That way, the court reasoned, notice only goes to people who are "actually similar" to the named plaintiffs. *Id.* Otherwise, a too-lenient approach can result in sending notice to employees who are not potential plaintiffs — which risks crossing the line from managing the case to soliciting claims, something *Hoffmann La-Roche* forbids. *Id.* at 442.

In light of the issues Defendants raise, the Court certifies this Order for immediate interlocutory appeal under 28 U.S.C. § 1292(b). The questions here satisfy § 1292(b)'s three guiding criteria.

1. This order involves a controlling question of law. *See* § 1292(b). A question of law is controlling if it could materially affect the outcome of a case. *In re Trump*, 874 F.3d

948, 951 (6th Cir. 2017). The decision to conditionally certify a collective action, under the current case law, necessarily means applying a lenient evidentiary standard. Applying this lower standard means notice may go to individuals who are not actually similarly situated to the named plaintiffs. (Otherwise, the decertification stage would not be necessary.) The resulting size of a conditionally certified collective can exert "formidable settlement pressure" on a defendant. *Swales*, 985 F.3d at 436. This pressure, in turn, may materially affect the case's outcome. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445, (2010) (Ginsburg, J., dissenting). Consequently, conditionally certifying a FLSA collective involves a controlling question of law. *In re Trump*, 874 F.3d at 951.

2. There is also substantial ground for a difference of opinion. All that is required to find that a substantial ground for a difference of opinion exists is that reasonable jurists might disagree on how an issue should play out. *Id.* We need not wait for contradictory precedent. *See id.* Here, though, there already is contradictory precedent—the Fifth Circuit has parted ways with how most district courts in the country manage FLSA collective actions. *Swales*, 985 F.3d at 443. Thus, fair-minded jurists may reach a different conclusion than this Court does today.

3. Lastly, an immediate appeal may materially advance the ultimate termination of this litigation. *In re Trump*, 874 F.3d at 952. If the Sixth Circuit defines with any particularity what the similarity standard requires, this would impact the size of the collective and the time it takes to litigate the case. The size of the class and the investments of time and money have a direct bearing on settlement pressure, damages,

and how the parties and the Court manage the litigation. So an immediate appeal may move this litigation along.

For the reasons above, the Court certifies its conditional certification of these collective actions for immediate review under § 1292(b).

### 2. Considering arbitration agreements at the conditional certification stage

Second, Defendants maintain that the arbitration agreements its employees signed should serve as a cutoff for who receives notice. This issue too satisfies the § 1292(b) criteria.

1. The issue involves a controlling question of law. District courts have historically reserved consideration of arbitration agreements until the decertification stage. *E.g., Thomas*, 2019 WL 4743637, at *3. Recent developments in case law, however, have indicated that courts ought rather to consider arbitration agreements sooner, in order to give effect to employees' agreements without adding needless burdens on a district court's resources and sending notice to individuals who ultimately will not be able to participate in the collective action. *E.g., Gaffers*, 900 F.3d at 296; *Bigger*, 947 F.3d at 1050; *In re JPMorgan*, 916 F.3d at 501. Giving effect to arbitration agreements earlier in FLSA cases impacts the size of the collectives, which in turn impacts the pressure on defendants to settle. *See Shady Grove*, 559 U.S. at 445 (Ginsburg, J., dissenting). And that materially affects the case's outcome. *Swales*, 985 F.3d at 436. Earlier consideration of arbitration agreements, then, involves a controlling issue of law.

2. There is also a substantial ground for difference of opinion. Until recently,

courts generally held off on considering arbitration agreements until the decertification stage. *E.g., Clark*, 2019 WL 4601930, at *7. Now our intra-circuit district courts have begun to consider evidence of such agreements earlier in the lifespan of a FLSA case. *York*, --- F. Supp. 3d ---, 2021 WL 918768, at *3; *Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 6459641, at *14 (M.D. Tenn. Nov. 3, 2020); *Bradford*, 2020 WL 3496150, at *5; *Lea Graham v. Word Enterprises Perry, LLC*, No. 18-CV-10167, 2019 WL 2959169, at *5 (E.D. Mich. June 18, 2019). But not all of them. *E.g., Marcum v. Lakes Venture, LLC*, No. 319CV00231GNSLLK, 2020 WL 6887930, at *3 (W.D. Ky. Nov. 24, 2020), *certificate of appealability denied*, No. 319CV00231GNSLLK, 2021 WL 495857 (W.D. Ky. Feb. 10, 2021). It is unresolved in this circuit to what extent a district court should consider arbitration agreements when ruling on motions to conditionally certify a collective action. Guidance from the circuit court would clarify how district courts ought to proceed in FLSA collective actions when arbitration agreements are in play.

3. Finally, resolution of the question by the circuit court may materially advance the ultimate termination of the litigation, not just in this case but in other FLSA actions. As it stands, no notice will go out to employees who have validly waived their right to participate in collective actions. After the opt-in period, the case will proceed through discovery, final certification, summary judgment, and possibly trial, followed by appeals to correct any error the Court may have committed at this early stage. But, if the circuit decides on an interlocutory appeal that a district court ought not consider arbitration agreements at the conditional certification stage, this case would proceed much differently. Opt-in notices would go out to more employees, the collectives would be

larger, and the settlement pressure would be different. In short, if the Court has committed error here, that error would be corrected sooner rather than later—a desirable outcome in complicated FLSA actions.

For these reasons, the Court also certifies its decision on the arbitration agreements here for review under § 1292(b).

## CONCLUSION

Upon consideration, the Court **GRANTS IN PART** and **DENIES IN PART** the plaintiffs' motion to conditionally certify collective actions and **ORDERS** as follows:

(1) The Court **CONDITIONALLY CERTIFIES** two FLSA collective actions comprised of the following individuals:

*FLSA Travel Time Collective*: All current and former hourly paid employees of Defendants who, between February 11, 2019 and [the date Defendants changed their travel policy to include hourly payment for travel time], worked in excess of 40 hours per workweek and were required to travel between clients' homes.

AND

*FLSA Shift Differential Collective*: All current and former hourly paid employees of Defendants who, between February 11, 2019 and February 11, 2021, worked in excess of 40 hours per workweek and received shift differential pay.

(2) The Court **CONDITIONALLY APPROVES** Plaintiffs' revised proposed opt-in notice (Doc. 20-5) for distribution to the Putative Collective Members, on the condition that within **TWENTY-ONE (21) DAYS** of the date this Order is entered Plaintiffs file a revised judicial notice that eliminates reference to the minimum wage collective and complies with all other parameters set forth in

26

this Order. Once that revised judicial notice is submitted, the Court will review and advise of its final approval.

(3) Within **THIRTY (30) DAYS** of the date this Order is entered, Defendants shall file evidence sufficient to identify the date they changed their travel policy to include hourly payment for travel time.

(4) Within **THIRTY (30) DAYS** of the date this Order is entered, Defendants shall do the following:

  a. Defendants shall file a spreadsheet, under seal, that identifies the names of all Putative Collective Members and whether they have signed an arbitration agreement.

  b. For each Putative Collective Member who *has* signed an arbitration agreement, Defendants shall file, under seal, sufficient evidence to show the validity of the arbitration agreement.

  c. For each Putative Collective Member who *has not* signed an arbitration agreement ("Non-Arbitration Putative Collective Members"), Defendants shall submit to Plaintiffs' counsel a second spreadsheet with the following information: full name, last known mailing address, last known email addresses, dates of employment, and position.

  d. The Court finds that the anticipated filings under this Order satisfy the requirements to file under seal, pursuant to *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016).

(5) Within **FOURTEEN (14) DAYS** of receiving the Non-Arbitration Putative

Collective Members' contact information from Defendants, Plaintiffs shall send the notices via U.S. mail and email.  The Non-Arbitration Putative Collective Members shall then have **SIXTY (60) DAYS** from the date Plaintiffs send the notices to join the litigation.

(6) The Court **DENIES** Plaintiffs' request to send any reminder notice.

(7) The Court **CERTIFIES** this Order for immediate appeal under 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND